UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LISA KNIGHT,

      Plaintiff,

                   **Hon. Hugh B. Scott**

     v.

                   **16CV788V**

                   **Report**
NANCY A. BERRYHILL[1], Acting        **and**
Commissioner of Social Security,       **Recommendation**

      Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket No. 9 (plaintiff); see Docket Nos. 15, 16 (defendant Commissioner's memoranda in opposition[2])).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

[2]Docket No. 16 does not contain a paragraph in Commissioner's discussion point III. B. regarding plaintiff's sporadic treatment, compare Docket No. 15, Def. Memo. at 22 with Docket No. 16, Def. Memo. at 22. Otherwise, the two memoranda are nearly identical.
  Defendant did not file a Notice of Motion but she seeks entry of judgment on the pleadings in her favor, e.g., Docket No. 16.

**PROCEDURAL BACKGROUND**

The plaintiff ("Lisa Knight" or "plaintiff") filed an application for disability insurance benefits on January 3, 2013. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated February 10, 2015, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on August 2, 2016, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on September 30, 2016 (Docket No. 1). The parties moved for judgment on the pleadings (Docket No. 9; see also Docket Nos. 15, 16). Technically, defendant Commissioner has not moved for judgment, but in her memoranda she asks for judgment on the pleadings (e.g., Docket No. 16, Def. Memo. at 2); the memoranda here will be deemed, nunc pro tunc, as defendant's motion for judgment on the pleadings. The motions were deemed submitted on September 25, 2017 (Docket No. 8).

**FACTUAL BACKGROUND**[3]

Plaintiff was born on March 9, 1973 (39 years old at the time of the ALJ's decision), and has completed high school (R. 33, 54). Her work experience included working on the onset date part time at a theater box office, concession stand, and coat check, jobs that did not rise to the level of substantial gainful activity (R. 21). She had past relevant work as a cashier/stocker (light, semi-skilled work as defined by the Dictionary of Occupational Titles, "DOT"), dietary

---

[3] References noted as "(R.__)" are to the certified record of the administrative proceedings, filed with this Court as Docket No. 8.

manager (sedentary, skilled, but performed at light exertion level), cashier (light, unskilled work, as performed and at a heavier level than listed in the DOT), and coffee server (light, unskilled, work, as performed and at a heavier level than listed in the DOT) but the ALJ found that she could not return to her past relevant work (R. 32). The ALJ found (as discussed below) that plaintiff has the residual functional capacity to perform only sedentary work (R. 32).

Plaintiff's severe impairments are impairment of her spine; anxiety; panic attacks; depression; gastroesophageal reflux disease (or "GERD"); and post-traumatic stress disorder ("PTSD") (R. 21). Knight claimed as impairments substance abuse, bilateral kidney stones, migraine headaches, and asthma. The ALJ found that the substance abuse was in early remission (R. 22); the kidney stones were resolved (R. 22); plaintiff did not seek treatment for her migraines (R. 22); and the asthma was controlled by medication (R. 22).

## MEDICAL AND VOCATIONAL EVIDENCE

As for plaintiff's mental impairments, the ALJ considered whether the criteria for Listing 1.04 were met, concluding that they were not (R. 22-23). On the "paragraph B" criteria for Listings 12.04 and 12.06, plaintiff's activities of daily living showed no restrictions, she has mild difficulties in social functioning and in maintaining concentration, persistence, or pace (R. 22-23). Knight had only one or two episodes of decompensation within a year, not repeated episodes as required by this Listing (R. 23). Since she did not have two marked limitations or more episodes of decompensation, "paragraph B" criteria were not met (R. 23). The ALJ then found that "paragraph C" criteria also were not met (R. 23).

Plaintiff testified at her hearing that she had PTSD from an abusive relationship with her partner, causing depression (R. 25, 60-61). She claims that she has anxiety attacks three to four

times a week and has panic attacks once or twice a month (R. 25, 61-63).   With her panic or anxiety attacks, plaintiff stated that she had fatigue three or four times a week to one to two times a month (R. 25, 64).   She complains of neck pain three to four times a week, daily lower back pain, upper extremity pain three to four times a week, right lower extremity pain daily, upper extremity weakness with activity, and lower extremity cramping once or twice a month (R. 25, 57, 59-60).

      The ALJ noted that plaintiff cleans, cooks, does dishes and laundry, makes her bed, paints as a hobby, shops, carries packages, and goes to church (R. 25, 69-71).   Knight testified that she can bathe and dress herself, that she could lift a gallon of milk (but not a 20 pound bag of potatoes), walk three blocks, stand for up to three minutes, and sit for 30-40 minutes before these actions become a problem (R. 25, 71-72).   She said that she could reach overhead and hold her arms in front of her without problem, but she could not pull or squat, stooping was a problem, and cold bothered her (R. 25, 72-73).   She described her pain as an 8 on a 10-point pain scale, but she takes medication and physical therapy for the pain (R. 25, 74).   She said that she avoided people, claiming that change is difficult for her, and a number of things triggered her stress (R. 25, 73-74).

      The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are credible for the reasons explained in this decision, but not to the extent alleged" (R. 25).

      Plaintiff's treating physician, Dr. Rosalind Sulaiman, noted in an employability assessment on August 25, 2014 (R. 755-61), that plaintiff was very limited in walking, standing,

sitting, lifting, carrying, pushing, pulling, bending, and climbing stairs or other objects (R. 755-57, 759, 30). Specifically, Dr. Sulaiman found that plaintiff could only occasionally lift or carry up to 10 pounds (R. 755), can sit, stand, or walk for 20 minutes, for a total of 1-2 hours during a work day, with plaintiff lying down for periods of a work day (R. 756), at least once a day for 20 minutes (R. 758). Plaintiff can never push or pull with either hand due to her severe neck and back pain (R. 757, 30). Dr. Sulaiman found that plaintiff's severe back and neck pain with radiation to extremities is exacerbated by movement and prolonged maintenance of position (R. 760). Dr. Sulaiman found that plaintiff was capable of "low stress" jobs (R. 758, 31), noting her anxiety, depression, PTSD, and schizo affective disorder (R. 760). In a May 19, 2014, assessment, Dr. Sulaiman repeated that, due to plaintiff's back pain, depression, anxiety, and asthma, plaintiff was very limited in walking, standing, sitting, lifting, carrying, pushing, pulling, bending, or climbing stairs, while moderately limited in using her hands (R. 762-63, 30).

The ALJ, however, gave Dr. Sulaiman's May 2014 assessment little weight because it was inconsistent with the consultative psychiatric evaluation of Susan Santarpia, Ph.D., of February 25, 2013 (R. 657, 28), and with the "fairly unremarkable treatment record" (R. 31). Dr. Santarpia found in 2013 that plaintiff's psychiatric problems were not "significant enough to interfere with the claimant's ability to function on a daily basis" (R. 660, 28). The ALJ gave most of Dr. Santarpia's opinion significant weight, save her opinion that plaintiff's prognosis was guarded (R. 28, 660).

The ALJ then gave Dr. Sulaiman's August 2014 assessment "some, but not great weight," because "it was partially based upon the claimant's complaints. Moreover, this

5

opinion is inconsistent with the doctor's own treatment notes of record, which have shown relatively unremarkable physical examinations" (R. 31).

The ALJ found that plaintiff has a residual functional capacity that she can lift ten pounds occasionally, stand and/or walk two hours in eight-hour workday, sit six hours in eight-hour day. She has occasional limitations in bending, climbing, stooping, squatting, and crawling, as well as occasional limitation in the ability to handle (gross manipulations) and occasional limitations in pushing and pulling with the upper extremities. Plaintiff has occasional limitations in the ability to understand, remember, and carry out detailed instructions. She cannot work in areas where she would be exposed to cold temperatures. (R. 23-24.) The ALJ concludes that plaintiff could perform sedentary work (R. 24), resulting in plaintiff not being able to resume her past relevant work (R. 32). Posing hypotheticals to the vocational expert similar to plaintiff's residual functional capacity, age, and work history, the expert opined that a claimant like plaintiff could perform such occupations as document preparer (sedentary, unskilled work), envelope addresser (sedentary, unskilled work), or surveillance system monitor (sedentary, unskilled work) (R. 33-34). Each of these occupations have positions in the national economy (R. 33-34). Thus, the ALJ found that plaintiff was not disabled (R. 34).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).   Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform."   Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

>   (1) whether the plaintiff is currently working;
>
>   (2) whether the plaintiff suffers from a severe impairment;
>
>   (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
>   (4) whether the impairment prevents the plaintiff from continuing past relevant work; and
>
>   (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

8

*Application*

In the instant case, plaintiff argues that the ALJ erred in not applying the treating physician rule and considering the opinion of Dr. Rosalind Sulaiman (R. 755-61) on plaintiff's ability to work (Docket No. 9, Pl. Memo. at 21-27). The ALJ only gave "some, but not great weight to this opinion" (id. at 24; R. 31) without assessing the factors for discounting the treating physician's opinion (Docket No. 9, Pl. Memo. at 22). Next, plaintiff faults the ALJ for rejecting her credibility and finding her subjective complaints of back and neck pain to be not supported by substantial evidence (at 27-28; R. 25). If the ALJ properly credited Dr. Sulaiman's opinion, plaintiff argues that she is capable only of less than sedentary work (Docket No. 9, Pl. Memo. at 28). Given the complete record supporting her position, plaintiff concludes that this matter should be remanded solely for calculation of benefits (id.).

Defendant Commissioner upholds the findings of the ALJ, since the medical record supports the residual functional capacity assessment (Docket No. 16, Def. Memo. at 19-21). Defendant argues that the ALJ properly considered plaintiff's subjective complaints (id. at 22). Since the ALJ properly found that plaintiff was not disabled, remand for damage calculation (or remand in general) is not warranted (id. at 22-23).

I.   Treating Physician and Plaintiff's Credibility as to Her Pain

Both substantive issues here turn on the appropriate credence for Dr. Sulaiman's opinion. The ALJ gave little weight to treating physician Dr. Sulaiman's opinion based upon the psychiatric consultant's opinion (which did not address plaintiff's physical condition) and plaintiff's complaints and the inconsistency of Dr. Sulaiman's opinion with the doctor's own treatment notes which showed "relatively unremarkable physical examinations" (R. 31). The

9

ALJ, however, fails to give comprehensive reasons for rejecting Dr. Sulaiman's opinion, cf. Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) (Docket No. 9, Pl. Memo. at 22).  Various factors (such as the extent of treatment, the amount of medical evidence supporting the opinion, the consistency of the opinion with the rest of the medical record, see Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam) (Docket No. 9, Pl. Memo. at 22)) needed to be considered in determining the weight to be given to the physician's opinion.  Here, the ALJ only contrasted Dr. Sulaiman's May 2014 opinion with the psychiatric consultative opinion.  The ALJ also found the level of treatment he believed would have been necessary if plaintiff was truly disabled and compared that standard with a general summary of Dr. Sulaiman's treatment records.  This is insufficient for rejecting the treating physician's views.  Similarly, the ALJ gave partial credence to Dr. Sulaiman's August 2014 opinion again because of the ALJ's view of plaintiff's "unremarkable physical examinations" in the record and that the August 2014 opinion was partially based on plaintiff's complaints.  A review of Dr. Sulaiman's treatment notes indicates that while the ALJ found plaintiff's condition was unremarkable, Dr. Sulaiman's examinations revealed that plaintiff had cervical spinal and paraspinal tenderness, decreasing range of motion in her neck and lower back (R. 631, 737, 750; see also R. 28, 29, 30 (ALJ findings)).

    In her August 2014 medical assessment, Dr. Sulaiman found that plaintiff was very limited in walking, standing, sitting, lifting, carrying, pushing, pulling, bending and climbing stairs due to her back pain (R. 763, 762), but the prognosis for her back pain was "fair" with an expected duration longer than twelve months (R. 762).  Review of Dr. Sulaiman's treatment notes for plaintiff do not show a basis for the limitations the doctor later found in her 2014 medical assessments.

In reply, plaintiff points out that the only assessment of her exertional limitations was by Dr. Sulaiman and, by adopting a less restrictive residual functional capacity assessment than Dr. Sulaiman's findings, plaintiff concludes that the ALJ made his own layperson medical determination (Docket No. 17, Pl. Reply at 2). While the ALJ may give such weigh as to the opinion of treating sources, the ALJ cannot make findings that are essentially his own lay determination of plaintiff's medical condition, Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) (id.). By giving "some, but not great weight" to Dr. Sulaiman's opinion, the ALJ opened the door to reaching his own opinion as to plaintiff's medical condition. This is in error, id.

II.  Extent of Remand

Plaintiff argues that this matter should be remanded only for calculation of damages, relying solely on the findings of Dr. Sulaiman (R. 763, 755-61). As noted above, however, there is an inconsistency between Dr. Sulaiman's unremarkable treatment records and her 2014 assessments finding that plaintiff was unable to perform up to sedentary level of work. Remand is necessary for the ALJ to reconcile these assessments with plaintiff's treatment records. This record is not sufficiently complete (but cf. Docket No. 9, Pl. Memo. at 28) to require merely the calculation of benefits on remand.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings (namely **determination of disability**). Defendant's motion for judgment on the pleadings (see Docket Nos. 15, 16) should be **DENIED** and plaintiff's motion for similar relief in her favor (Docket No. 9) should be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the

basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

So Ordered.

*s/Hugh B. Scott*

Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
December 22, 2017